**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARILYN L. HAMILTON,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 16-5602** |
| | : | |
| **WILLIAM R. HITE, Philadelphia City** | : | |
| **School District Superintendent et al.,** | : | |
| *Defendants.* | : | |
| **MARILYN HAMILTON,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 16-6579** |
| | : | |
| **CITY SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA et al.,** | : | |
| *Defendants.* | : | |
| **MARILYN L. HAMILTON,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 17-970** |
| | : | |
| **ADAM BUCK et al.,** | : | |
| *Defendants.* | : | |

PRATTER, J.                                                                      AUGUST 21, 2017

## MEMORANDUM

Marilyn Hamilton believes that the School District of Philadelphia and its officials and/or

employees mistreated her and her grandson S.R.  She has filed three *pro se* lawsuits based on

those beliefs.  Cross motions for summary judgment are now ripe for resolution in each of the

cases.  Because no rational trier of fact could find in favor of Ms. Hamilton based on the

evidentiary record, the Court denies Ms. Hamilton's motions for summary judgment and grants Defendants' motions for summary judgment.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of Ms. Hamilton's Operative Complaints

Ms. Hamilton, who describes herself as hearing-impaired, filed her first lawsuit, C.A. 16-5602, against William R. Hite (Superintendent of the Philadelphia School District), Webster Elementary School, Sherri Arabia (Principal of Webster Elementary), Byron Golson (Assistant Principal of Webster), the School District of Philadelphia, Rachel Holzman (Deputy Chief, Office of Student Rights and Responsibilities), Carl W. Holmes, Jr. (Philadelphia Police Chief Inspector), Nancy Donlon (nurse at Webster), Rhonda Miller (teacher at Webster), Pauline Cooperson (Dean of Students at Webster), and Mrs. Colston (identified as Dean of Students). Ms. Hamilton's amended complaint[2] stated that she was raising civil rights claims based on events that occurred at Webster Elementary. Although her allegations are not entirely clear, it appears that Ms. Hamilton was dissatisfied with the manner in which school officials treated S.R. and believed that officials interfered with her ability to address her concerns by failing to provide her with a sign language interpreter. She also stated that certain defendants retaliated against her, apparently by destroying her car, calling child protective services, and beating S.R.

Approximately two months after filing her first lawsuit, Ms. Hamilton initiated a second lawsuit, C.A. 16-6579, naming several of the same defendants—including the School District of Philadelphia, Superintendent Hite, Rachel Holzman, and Carl Holmes—and several new defendants—Jessica Ramos (Principal of Stearne Elementary), Security Guard Dennise,

---

[1]    Ms. Hamilton filed the same motion for summary judgment in each action. The Defendants filed three distinct motions for summary judgment, with each motion incorporating a single statement of undisputed facts.

[2]    Ms. Hamilton filed her initial complaint on October 26, 2016, and filed an amended complaint naming additional defendants on November 29, 2016.

Elizabeth Cortez (School Counselor at Howe), and Marcia Roye (Director of Student Services at Howe). The complaint contains allegations based on events that appear to have taken place at three elementary schools in the Philadelphia School District—Stearne Elementary, Howe Elementary, and Webster Elementary.

In her second lawsuit, Ms. Hamilton alleged that S.R. was treated unfairly, yelled at, and bullied by teachers at Stearne Elementary. Ms. Hamilton filed a "bullying" complaint after an incident during which school employees allegedly tried to hit S.R., but did not receive a response to her complaint. Ms. Hamilton also claimed that S.R. was assaulted by staff in the wake of a fight between him and another student. Following meetings between Ms. Hamilton and school officials concerning that incident, S.R. was expelled from school. Ms. Hamilton appears to claim, at least in part, that certain defendants assaulted S.R., removed S.R. from school, and filed false complaints with the Philadelphia Department of Human Services ("DHS") to retaliate against her for filing a complaint with the Department of Education's Office of Civil Rights and for filing a federal lawsuit. The Court has already dismissed Defendant Holmes from C.A. 16-6579.

Three months after filing her second lawsuit, Ms. Hamilton initiated a third lawsuit, C.A. 17-970, again against many of the same defendants previously named in the prior lawsuits—including the School District, Superintendent Hite, Rachel Holzman, and Jessica Ramos—and several new defendants—Jenna Monley (Executive Director, Office of Family and Community Engagement), Sherry Williams (Family Engagement Coordinator), and Adam Buck (Sign Language Interpretation Coordinator)—based on events that took place at Stearne Elementary. As in C.A. 16-6579, Ms. Hamilton alleged that S.R. was removed from school because she had filed a civil rights complaint and claimed that some individuals filed false complaints against her

with DHS. She also alleged that Defendants interfered with S.R.'s ability to get an education, used sign language interpreters to harass her, and interfered with her ability to rectify the situation with the school.[3]

The Court consolidated these actions for all pretrial purposes on March 23, 2017. *See, e.g.*, Doc. No. 23, C.A. 16-5602.[4]

The Court liberally construes Ms. Hamilton's complaints as asserting the following federal law or constitutionally based causes of action: (i) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983; (ii) retaliation and discrimination claims pursuant to Section 504 of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act ("ADA"); (iii) a violation of the Health Insurance Portability and Accountability Act ("HIPAA"); and (iv) certain claims on behalf of S.R.

### B.    Statement of Undisputed Facts[5]

Ms. Hamilton, who is hearing impaired, is the grandparent/guardian of S.R. S.R. is a minor who was enrolled as a student with the School District of Philadelphia for the 2015-2016 and 2016-2017 school years, the time frame relevant to these actions. S.R. attended (i) Marshall

---

[3]    Ms. Hamilton initiated a fourth civil action—based on the same facts and claims set forth in the first three civil actions—that this Court dismissed because a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Hamilton v. City Sch. Dist. of Phila.*, No. 17-2623, 2017 WL 2642969, at *3 (E.D. Pa. June 16, 2017) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc)).

[4]    Unless otherwise noted, all docket references refer to C.A. 16-5602.

[5]    This section is derived from the Defendants' Statement of Uncontested Material Facts, which is supported by citations to the evidentiary record. Ms. Hamilton has not pointed to any record evidence disputing Defendants' Statement of Uncontested Material Facts. Rather, Ms. Hamilton has opposed Defendants' Statement of Uncontested Material Facts with unsubstantiated allegations and general denials. A party cannot create a genuine issue of material fact by relying on "mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). Accordingly, even after reading Ms. Hamilton's papers with indulgent eyes, the Court considers Defendants' properly supported Statement of Uncontested Material facts to be undisputed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

Elementary from the beginning of the 2015-2016 school year until January 20, 2016;

(ii) Webster Elementary from January 21, 2016 until the end of the 2015-2016 school year; (iii)

Howe Elementary from September 7, 2016 until October 6, 2016; and (iv) Stearne Elementary

from October 7, 2016 to December 16, 2016, when Ms. Hamilton withdrew S.R. from school.

1.   Ms. Hamilton Files Complaints with the United States Department of
Education Office for Civil Rights

Ms. Hamilton filed a complaint with the United States Department of Education Office

for Civil Rights ("OCR") on March 31, 2016, alleging the School District discriminated against

her on the basis of disability and race. Ms. Hamilton specifically alleged: (i) the School District

discriminated against her when the school nurse at Webster Elementary School failed to

effectively communicate with Ms. Hamilton due to her hearing impairment prior to contacting

S.R.'s physician; (ii) the School District failed to provide an interpreter during a meeting

between Webster Elementary's principal and Ms. Hamilton; and (iii) the School District

retaliated against Ms. Hamilton for filing a complaint with the School District by suspending

S.R. on May 24, 2016. After considering specific documentation provided by the School District

and Ms. Hamilton, OCR informed the School District on September 27, 2017 that it had

determined that the evidence was insufficient to support a finding that the School District

violated Section 504, Title II of the ADA, or Title VI of the Civil Rights Act of 1964.

Ms. Hamilton filed a second OCR complaint against the School District on June 15,

2016. OCR informed the School District on March 1, 2017 that it was closing Ms. Hamilton's

second OCR complaint because Ms. Hamilton filed a lawsuit containing the same allegations in

federal court.

2.     Requests for—and Provision of—Sign Language Interpreters

The School District maintains a Sign Language Interpretation webpage, stating it is "committed to fostering compliance with Title II of the ADA, Section 504, and all similar statutory and regulatory laws, by providing its services, programs and school-sponsored activities in a way that assures all reasonable accommodations are made to accomplish equal access through communications."  Def. Statement Uncontested Facts ¶ 17, Doc. No. 33 Ex. A. The School District also provides sign language interpretation services for students, parents, guardians, employees, and community members for activities such as report card conferences, IEP meetings, extra-curricular functions, and public meetings.  In order to obtain these interpretation services, an individual must fill out the School District's online request forms.

The School District arranged for a sign language interpreter for multiple meetings that were scheduled to discuss S.R., some of which Ms. Hamilton attended and others of which she did not.  Ms. Hamilton did not attend meetings scheduled for May 21, 2016, June 6, 2016, June 21, 2016, and October 5, 2016.  The School District gave Ms. Hamilton prior notice of these meetings.  Ms. Hamilton attended meetings on October 17, 2016, October 21, 2016, December 12, 2016 and December 14, 2016.[6]

3.     Events Taking Place at Webster Elementary School

After S.R. enrolled at Webster Elementary, Ms. Hamilton provided Nurse Nancy Donlon with an inhaler for S.R. to use during the school day.  Nurse Donlon informed Ms. Hamilton that the school could administer the inhaler for an initial 10-day window, but that S.R.'s doctor would have to complete a prescription form for the school to administer the inhaler after the 10-day

---

[6]     While Ms. Hamilton alleges that the School District failed to provide sign language interpreters for other meetings she attended, Ms. Hamilton fails to document, with citations to the record, (i) which meetings she is referring to, or (ii) her request to have a sign language interpreter present at those meetings.

window.  Nurse Donlon provided Ms. Hamilton with the relevant form on two separate occasions in early February 2016.  When Nurse Donlon did not receive a prescription form back from Ms. Hamilton, Nurse Donlon faxed the prescription form directly to S.R.'s doctor on February 9, 2016.  S.R.'s doctor received the form and forwarded it to Ms. Hamilton.  Ms. Hamilton filed a complaint against Nurse Donlon with the Parent and Family Resource Center on March 21, 2016 based on Nurse Donlon's actions.

Webster Elementary suspended S.R. twice in May 2016.  The first suspension was a result of S.R. choking a student in art class.  Dean of Students Pauline Cooperson informed Ms. Hamilton that S.R. was going to be suspended as a result of this incident.  Ms. Hamilton's agitated response to receiving this news resulted in Webster Elementary suspending Ms. Hamilton from school grounds absent a prearranged appointment.  The second suspension resulted from S.R.'s initiation of a fight in the hallway and the fact that he punched Ms. Cooperson after she intervened to stop the fight.  S.R. signed a statement acknowledging that he punched Ms. Cooperson by accident.

Webster Elementary suspended S.R. once in June 2016.  This suspension was a result of Mr. Golson and another Webster employee breaking up a fight between S.R. and another student. S.R. physically struck both Mr. Golson and the other Webster employee as they attempted to break up the fight.  After S.R. was taken to the office, S.R. physically struck a third Webster employee.

Webster employees notified Ms. Hamilton that they would provide a sign language interpreter for a meeting on June 21, 2016 to discuss the incident, but Ms. Hamilton did not show up to the meeting.

S.R. was transferred out of Webster Elementary at the end of the 2015-2016 school year as a result of the deteriorating relationship between Ms. Hamilton and Webster Elementary staff.

### 4. Events Taking Place at Howe Elementary School

S.R. had physical altercations with other Howe students and staff in September 2016. S.R. first got into a fight in a classroom. When staff attempted to escort S.R. to the school office, S.R. exited the school and was brought back to school by a Philadelphia police officer. Later in September, S.R. physically attacked another student on two consecutive days. As a result of these incidents, S.R. was suspended from Howe Elementary for two days. After learning of the suspension, Ms. Hamilton approached Ms. Elizabeth Cortez in Ms. Cortez's office. Ms. Cortez notified the Howe principal, who explained to Ms. Hamilton why S.R. was being suspended and described S.R.'s behavior during September 2016. Ms. Cortez, based on her interaction with Ms. Hamilton, called DHS raising concerns of emotional and mental health neglect by Ms. Hamilton.

### 5. Events Taking Place at Stearne Elementary School

S.R. was suspended from Stearne Elementary twice in October 2016. The first suspension was a result of S.R. attacking other students in his classroom. S.R.'s actions included choking other students. S.R. was suspended later in October 2016 for physically assaulting a Stearne Elementary employee who was trying to break up a fight. Following these incidents, Stearne employees asked Ms. Hamilton if she would accept any school services to help S.R. with his behavioral issues. Ms. Hamilton declined.

S.R. was suspended in December 2016 due to S.R. engaging in a fight during recess and S.R. physically assaulting a number of Stearne Elementary personnel who tried to break up the fight and calm S.R. down. During a reinstatement meeting following S.R.'s suspension at which

Ms. Hamilton and a sign language interpreter appeared, Ms. Hamilton was again offered school based services for S.R.  Ms. Hamilton again declined.

A final meeting was held between Ms. Hamilton and Stearne Elementary employees on December 14, 2016.  A sign language interpreter was present.  Ms. Hamilton did not send S.R. back to school after the December 14, 2016 meeting.

Stearne Elementary staff contacted DHS a number of times based on their interactions with Ms. Hamilton.  DHS informed Stearne Elementary staff that it determined that Ms. Hamilton was an able guardian with the capacity to handle S.R. at home and that S.R.'s home setting was adequate with no ascertainable safety hazards.  DHS recommend that Stearne Elementary staff contact the police when S.R. exhibited violent behaviors.

## II.    LEGAL STANDARDS

Cross motions for summary judgment are analyzed pursuant to the same standards as a stand-alone motion for summary judgment.  *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).  Upon motion of a party, summary judgment in a federal case is appropriate if, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," the moving party persuades the district court that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a), (c); *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.  *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no

genuine issue of material fact, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition by "citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1). "The Court need consider only the cited materials" when determining whether there exists a genuine issue of material fact for trial. Fed R. Civ. P. 56(c)(3). The non-moving party cannot defeat summary judgment merely be relying on allegations contained in his or her pleadings or by reasserting those allegations in summary judgment papers. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Rather, "a party opposing summary judgment must present *affirmative* evidence—whether direct or circumstantial—to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (emphasis in original).

If the cited evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)). Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

## III.    DISCUSSION

Defendants move for summary judgment on all potential claims brought by Ms.

Hamilton.  Defendants argue, in essence, that Ms. Hamilton has failed to create a genuine dispute

of material fact because she has not produced evidence supportive of her claims or cited to

material in the evidentiary record that raises a genuine dispute for trial.  Ms. Hamilton also

moves for summary judgment across the three civil actions she initiated, largely reasserting the

allegations pleaded in her operative complaints.  For the reasons articulated below, the Court

agrees with Defendants that Ms. Hamilton has not adduced evidence sufficient to create a

genuine dispute of material fact and the Court finds that Defendants are entitled to judgment as a

matter of law in all three cases.

### A.    Defendants' Motions for Summary Judgment

#### 1.    Claims Against Webster Elementary and Stearne Elementary

Ms. Hamilton named Webster Elementary and Stearne Elementary as defendants.

Webster Elementary and Stearne Elementary are not legal entities separate from the School

District of Philadelphia.  The individual schools (as opposed to the School District) are not

entities that can be sued.  *Estate of Massey v. City of Phila.*, 118 F. Supp. 3d 679, 699 (E.D. Pa.

2015).  Accordingly, the Court grants summary judgment in favor of Webster Elementary and

Stearne Elementary.

#### 2.    Claims Brought on Behalf of S.R.

Ms. Hamilton's complaints contain numerous allegations that appear to raise

constitutional claims on behalf of S.R.  Non-attorney adults proceeding *pro se* are not permitted

to bring claims on behalf of minor children.  *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876,

882-83 (3d Cir. 1991).  This is true even if the *pro se* adult is the minor child's parent or

guardian.  *Id.*  Accordingly, to the extent Ms. Hamilton has asserted any claims on behalf of S.R.,

the Court dismisses them without prejudice because Ms. Hamilton lacks standing to sue on

behalf of S.R.  *See Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir.

2011) (explaining that in order for a plaintiff to have standing a plaintiff "must assert his or her

own legal interests rather than those of a third party" (quotation marks omitted)).

3.      Claims against Defendants Mrs. Colston, Elizabeth Cortez, Jenna Monley,
        Sherry Williams, Adam Buck, and Security Guard Dennise

Ms. Hamilton's complaints do not contain allegations that could serve as a factual

predicate for any violation of Ms. Hamilton's federal or constitutional rights by Defendants

Colston, Cortez, Monley, Williams, Buck, or Security Guard Dennise.  Neither has Ms. Hamilton

pointed the Court to any part of the evidentiary record that could support a cause of action

against Defendants Colston, Cortez, Monley, Williams, Buck, or Security Guard Dennise.

Accordingly, the Court grants summary judgment in favor of Defendants Colston, Cortez,

Monley, Williams, Buck, and Security Guard Dennise.[7]

4.      Claim Against Nurse Donlon for HIPAA Violation

Ms. Hamilton appears to bring a claim against Nurse Donlon pursuant to HIPAA based

on Nurse Donlon faxing a prescription form directly to S.R.'s doctor.  This claim fails as a matter

of law because HIPAA does not provide for a private cause of action.  *Baum v. Keystone Mercy

Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011).

---

[7]      Ms. Hamilton does allege that Security Guard Dennise violated S.R.'s rights by physically
assaulting him.  As discussed above, however, Ms. Hamilton cannot bring a constitutional claim on behalf
of S.R.  Because Ms. Hamilton does not allege a violation of her own rights on the part of Security Guard
Dennise, and because no part of the evidentiary record supports a cause of action against Security Guard
Dennise, the Court grants summary judgment in favor of Security Guard Dennise.

5. <u>First Amendment Retaliation Claims Pursuant to 42 U.S.C. § 1983</u>

Section 1983 affords individuals with a remedy when state actors violate their federally protected rights. *See Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). In order to make out a cognizable § 1983 claim, a plaintiff must establish "that a person acting under color of law deprived him of a federal right." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). To succeed on a First Amendment retaliation claim brought pursuant to § 1983, a plaintiff must demonstrate "that the activity in question is protected by the First Amendment, and . . . that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). If a plaintiff is able to meet her burden to demonstrate a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate that it would have taken the same action even in the absence of plaintiff's protected activity. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

The Court interprets Ms. Hamilton's First Amendment retaliation claims to be based on the following actions Ms. Hamilton alleges were taken in retaliation for her complaints of discrimination:

- Superintendent Hite ordered school personnel not to provide S.R. with school services;
- Ms. Holzman (i) authorized school personnel to assault S.R., and (ii) ordered school personnel not to provide S.R. with school services;
- Ms. Arabia (i) destroyed Ms. Hamilton's car, and (ii) assaulted S.R.;
- Mr. Golson (i) destroyed Ms. Hamilton's car, and (ii) assaulted S.R.;
- Ms. Cooperson assaulted S.R.;
- Ms. Miller refused to let S.R. use the bathroom; and
- Ms. Ramos (i) suspended S.R., (ii) refused to provide S.R. with school services, and (iii) filed complaints with DHS.

There does not appear to be a dispute that Ms. Hamilton engaged in activities protected by the First Amendment by filing complaints with the School District, with the U.S. Department

of Education, and in federal court. *See Anderson v. Davila*, 125 F.3d 148, 161-62 (3d Cir. 1997) (explaining that filing lawsuits and complaints is protected by the First Amendment's Petition Clause); *R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 197 (D.N.J. 2008) (finding that plaintiff "engaged in activity protected by the First Amendment's Petition Clause when she announced her intent to file a complaint with the USDOE's Office for Civil Rights, actually filed the complaint, and initiated due process proceedings with the Office of Administrative Law"). The pertinent issues before the Court with regard to Ms. Hamilton's First Amendment claims are whether, based on the evidentiary record, a rational trier of fact could determine that (i) the individual defendants were personally involved in the alleged retaliatory conduct, and if so, (ii) the alleged retaliatory conduct was substantially motivated by Ms. Hamilton's protected activities.

Defendants presented the Court with a detailed evidentiary record of the School District's interactions with Ms. Hamilton and S.R. during the time period relevant to Ms. Hamilton's allegations. A rational trier of fact could not find in Ms. Hamilton's favor on her First Amendment retaliation claims based on the evidentiary record provided by Defendants. Ms. Hamilton has not provided the Court with any credible evidence that disputes the Defendants' account of events, which is supported by the evidentiary record. Ms. Hamilton cannot defeat summary judgment by relying on unsubstantiated allegations made in her pleadings or other submissions to the Court. *Lujan*, 497 U.S. at 888; *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 201. The Court addresses the allegations against each defendant in turn.

*Superintendent Hite.* No part of the evidentiary record supports the contention that Superintendent Hite had any personal involvement with Ms. Hamilton or S.R and Ms. Hamilton has not pointed the Court to any part of the evidentiary record that would support a finding that

Superintendent Hite was aware of the problems that had arisen between S.R., Ms. Hamilton, and the School District. Accordingly, the evidentiary record does not support a cause of action against Superintendent Hite pursuant to § 1983. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

*Ms. Holzman.* The evidentiary record provides no support for Ms. Hamilton's allegations that Ms. Holzman either authorized School District personnel to assault S.R. or ordered School District personnel to stop providing S.R. with services. The only references to Ms. Holzman in the record are e-mails in which Ms. Holzman is made aware of the fact that Ms. Hamilton made certain complaints concerning the way the School District and its employees were treating Ms. Hamilton and S.R. *See, e.g.*, Doc. No. 40 at p. 2, Doc. No. 41 at pp. 20-26. Rather than demonstrate that Ms. Holzman took any retaliatory action against Ms. Hamilton for complaining about the behavior of School District employees and/or officials, the e-mails show Ms. Holzman working with other officials to learn more about the problems raised by Ms. Hamilton. Accordingly, the evidentiary record does not support a First Amendment retaliation claim against Ms. Holzman.

*Webster Elementary Employees (Ms. Arabia, Mr. Golson, Ms. Miller, and Ms. Cooperson).* The evidentiary record does not support Ms. Hamilton's allegations that Webster Elementary employees retaliated against her in violation of her First Amendment rights by (i) assaulting S.R., (ii) preventing S.R. from using the bathroom, or (iii) blowing up her car.

First, the only record evidence pertaining to physical interactions between S.R. and Webster Elementary employees establishes that each interaction was the result of Webster

employees breaking up fights between S.R. and other students or S.R. physically attacking Webster employees. *See, e.g.*, Def. Mot. Summ. J. Ex. B at 48-49, 55-59, 101-05, Doc. No.33.

Second, nothing in the evidentiary records supports Ms. Hamilton's allegation that Ms. Miller prevented S.R. from using the bathroom in retaliation for Ms. Hamilton filing a complaint. The only evidence Ms. Hamilton offers with regard to Ms. Miller are text message exchanges in which Ms. Miller asks Ms. Hamilton to come to the school to deal with S.R.'s behavioral issues. *See* Doc. No. 5 at pp. 3-4.

Third, while Ms. Hamilton has presented evidence that something happened to her car that resulted in it catching fire, *see* Doc. No. 18 at pp. 4-6, the evidentiary record as a whole contains nothing that connects either Ms. Arabia or Mr. Golson to Ms. Hamilton's car catching fire. For example, the police report prepared by the responding officers expresses no opinion as to whether the car fire was a result of arson or the car malfunctioning. The police report also does not state that any individuals witnessed the car catching fire. Doc. No. 18 at p.6. No rational trier of fact could conclude, based on the evidence presently before the Court, that Ms. Arabia or Mr. Golson had anything to do with Ms. Hamilton's car catching fire, let alone that Ms. Arabia or Mr. Golson set the car on fire to retaliate against Ms. Hamilton.

Accordingly, the evidentiary record does not support a First Amendment retaliation claim against Ms. Arabia, Mr. Golson, Ms. Cooperson, or Ms. Miller.

**Ms. Ramos.** The evidentiary record does not support Ms. Hamilton's contention that her protected activities were a motivating or substantial factor in any actions taken by Ms. Ramos, the principal of Stearne Elementary. First, the evidentiary record demonstrates that each of S.R.'s suspensions from Stearne Elementary were a result of S.R. engaging in violent and disruptive behavior at school. *See* Def. Mot. Summ. J. Ex. B. at 263-75. Second, far from

demonstrating that Ms. Ramos refused to provide S.R. with services in retaliation for Ms. Hamilton filing complaints, the evidentiary record demonstrates that Ms. Ramos and others at Stearne Elementary offered to provide S.R. with services to help with his behavioral problems, but that Ms. Hamilton refused. *See* Def. Mot. Summ. J. Ex. B. at 278, 501-02, 505-06. Third, Ms. Hamilton has not pointed to any part of the evidentiary record to support her allegation that Ms. Ramos filed complaints with DHS. In fact, the evidentiary record establishes that other Stearne Elementary employees filed complaints with DHS, not Ms. Ramos. *See, e.g.*, Def. Mot. Summ. J. Ex. B at 234-35. Accordingly, the evidentiary record does not support a First Amendment retaliation claim against Ms. Ramos.

The Court grants summary judgment in favor of Superintendent Hite, Ms. Holzman, Ms. Arabia, Mr. Golson, Ms. Miller, Ms. Cooperson, and Ms. Ramos on Ms. Hamilton's First Amendment retaliation claim.

### 6.   Retaliation Claims Pursuant to the ADA and Section 504

The ADA and Section 504 each contain anti-retaliation provisions. *See* 42 U.S.C. § 12203(a) (ADA); 34 C.F.R. § 100.7(e) (Section 504).

Section 12203(a) states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

Section 504's anti-retaliation regulation states:

> Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept

confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.

34 C.F.R. § 100.7(e).

The standard for a retaliation claim under the ADA and Section 504 are the same. *Boandl v. Geithner*, 752 F. Supp. 2d 540, 561 (E.D. Pa. 2010); *Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 299 (M.D. Pa. 2008). To establish a *prima facie* case of retaliation under either statute, a plaintiff must show (i) that the plaintiff engaged in protected activity, (ii) that the defendant's retaliatory action would deter a person of ordinary firmness from exercising her rights, and (iii) a causal connection between the plaintiff's protected activity and the defendant's retaliatory action. *Lauren W.*, 480 F.3d at 267.

A plaintiff's claims for retaliation pursuant to the ADA and Section 504 are governed by the *McDonnell Douglas* framework, even if the retaliation claims arise outside of the employment context. *See Derrick F.*, 586 F. Supp. 2d at 299 (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Thus, if a plaintiff is able to make out a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory basis for the alleged action. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (citation omitted). If the defendant meets this burden, the plaintiff is provided an opportunity to demonstrate that the nondiscriminatory explanations offered by the defendant were mere pretext for discrimination. *Id.*

### a. *Claims Against Individual Defendants*

A plaintiff cannot bring a lawsuit against an individual defendant based on a violation of Section 504. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). The Third Circuit Court of Appeals has not definitively addressed, however, the issue of whether individual defendants can be held liable for violating

the ADA's anti-retaliation provision. District courts within the Third Circuit are split on the issue. *Cottrell v. Good Wheels*, No. 08-1738, 2009 WL 3208299, at *2 (D.N.J. Sept. 28, 2009) (finding that individual defendants cannot be held liable for retaliation pursuant to the ADA) *with Datto v. Harrison*, 664 F. Supp. 2d 472, 491 (E.D. Pa. 2009) ("The Court finds that individual liability may be imposed for retaliation claims under the ADA involving either public entities or public accommodations."). Given the lack of attention paid to this issue by the litigants,[8] the Court declines to reach this issue because the evidentiary record would not support such claims even if Ms. Hamilton were able to sue the individual defendants. *See supra* Section III.A.5.

### b. *Claims against the School District*

The Court interprets Ms. Hamilton's ADA and Section 504 retaliation claims against the School District to be based on: (i) S.R.'s suspensions from Webster Elementary, Howe Elementary, and Stearne Elementary; (ii) School District officials filing complaints with DHS; (iii) alleged harassing phone calls from the School District; and (iv) the allegation that School District officials refused to provide S.R. with services.

First, the evidentiary record demonstrates that the School District had legitimate, nondiscriminatory reasons for each of S.R.'s suspensions. Webster Elementary suspended S.R. three times between May 2016 and June 2016 based on S.R. choking another student, getting into fights with other students, and physically attacking Webster personnel. *See, e.g.*, Def. Mot. Summ. J. Ex. B. at 49-50, 55-59, 100-05. Howe Elementary suspended S.R. one time in September 2016 based on S.R.'s verbal and physical attacks against another student. *See, e.g.*, Def. Mot. Summ. J. Ex. B. at 255-59. Stearne Elementary suspended S.R. three times between

---

[8]     It is understandable that Ms. Hamilton, proceeding *pro se*, did not focus on this issue in her submissions to the Court. The fact that the School District Defendants spent one sentence on this issue in their motions for summary judgment is more puzzling.

October 2016 and December 2016 based on S.R.'s physical attacks against other students and Stearne Elementary personnel. *See, e.g.*, Def. Mot. Summ. J. Ex. B. at 263-75. Ms. Hamilton has not pointed to any record evidence demonstrating that the School District's asserted bases for S.R.'s suspensions were pretextual.

Second, the evidentiary record demonstrates that the school counselors at Howe and Stearne who filed complaints with DHS did so for legitimate, nondiscriminatory reasons. For example, the evidence demonstrates that counselors at Howe and Stearne filed complaints with DHS with regard to S.R. on the basis of emotional/mental health neglect based on their observations that S.R. repeatedly exhibited violent behaviors towards other students and staff. *See, e.g.*, Def. Mot. Summ. J. Ex. B. at 234; Doc. No. 40 at pp. 2-4; Doc. No. 41 at p. 10. The evidence also demonstrates that the counselors were concerned about S.R.'s wellbeing because when Ms. Hamilton was informed of S.R.'s behavior in September 2016, a counselor observed Ms. Hamilton tell S.R., "If another kid hits you, I want you to beat their ass." Def. Mot. Summ. J. Ex. B. at 234. Ms. Hamilton has not pointed to any record evidence demonstrating that the School District's asserted bases for making the DHS complaints were pretextual.

Third, Ms. Hamilton has failed to produce affirmative evidence demonstrating a causal connection between the alleged harassing phone calls she received and her protected activities. The evidence offered by Ms. Hamilton in support of her contention that the School District harassed her in retaliation for filing her complaints are a series of pictures showing that a School District phone number called her cell phone a number of times. *See, e.g.*, Doc. No. 5 at pp. 8-21; Doc No. 39 at p. 2. Each call originated from the number "215-717-1400." In response to Ms. Hamilton's motions for summary judgment, the School District submitted an Affidavit from Tahirah Jones, a Technology Services Manager for the School District. The Jones Affidavit

attests to the fact that the "215-717-1400" number is a "centralized phone line to disseminate information to the parents of students" and that the "centralized phone line is not used to contact individual parents." Jones Affidavit ¶¶ 4, 7-8, Doc. No. 48 Ex. A. Ms. Hamilton has pointed to no record evidence, and has produced no affirmative evidence, raising a genuine dispute of fact as to the accuracy of the Jones Affidavit.

Fourth, as discussed above, *see supra* Section III.A.5, the evidentiary record demonstrates that School District officials continuously offered to provide S.R. with services.

Accordingly, because the evidentiary record does not support an ADA or Section 504 retaliation claim against any defendant, the Court grants summary judgment in favor of Defendants on Ms. Hamilton's ADA and Section 504 retaliation claims.

7. <u>Discrimination Claims Pursuant to Title II of the ADA and Section 504</u>

The ADA and Section 504 both prohibit discrimination against qualified individuals with a disability.

Title II of the ADA, which addresses discrimination by public entities, states that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504's anti-discrimination provision similarly provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

To prevail on a discrimination claim under either the ADA or Section 504, a plaintiff must demonstrate the she "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013) (citation omitted). Defendants do not appear to contest the first two factors.

a. *Claims Against Individual Defendants*

Plaintiffs cannot bring discrimination claims based on violations of Title II of the ADA or Section 504 against individual defendants. *A.W.*, 486 F.3d at 804; *Emerson*, 296 F.3d at 189-90. Accordingly, Ms. Hamilton's discrimination claims against the individual defendants fail as a matter of law.

b. *Claims against the School District*

The Court construes Ms. Hamilton's ADA and Section 504 discrimination claims to be based on her allegations that the School District did not reasonably accommodate her disability by failing to effectively communicate with her and by failing to provide sign language interpreters at school meetings.

The regulations implementing Title II of the ADA require that public entities "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). The regulations further require that public entities furnish individuals with disabilities "appropriate auxiliary aids and services where necessary," but that "[t]he type of auxiliary aid or service necessary to ensure effective communication" is situation dependent. 28 C.F.R. § 35.106(b); *see also* 28 C.F.R. § 42.503(e) (regulation implementing Section 504 and

stating that "[r]ecipients shall insure that communications with their applicants, employees and beneficiaries are effectively conveyed to those having impaired vision and hearing").

With regard to the School District's general communications with Ms. Hamilton, the evidentiary record demonstrates that the School District and its employees made an effort to communicate with Ms. Hamilton via written forms of communication such as text messages, letters, and written notices. *See, e.g.*, Def. Mot. Summ. J. Ex. B. at 7, 23, 26, 376, 402, 485-91; Doc. No. 5 at pp. 3-7.[9]

With regard to the School District's willingness to provide sign language interpreters, the evidentiary record demonstrates that the School District (i) has a policy in place to accommodate hearing impaired individuals, which includes an online request form for hearing impaired individuals to request sign language interpreters, and (ii) provided sign language interpreters for eight separate meetings, four of which Ms. Hamilton attended and four of which she did not. Ms. Hamilton has not pointed the Court to record evidence suggesting that the School District ever failed to provide a sign language interpreter for a prescheduled meeting for which Ms. Hamilton had requested a sign language interpreter.[10]

---

[9]    The School District interpreted Ms. Hamilton's complaints to allege discrimination largely based on Nurse Donlon's alleged failure to effectively communicate with Ms. Hamilton concerning the prescription form. The Court, however, interprets Ms. Hamilton's filing concerning Nurse Donlon to focus on an allegation that Nurse Donlon violated Ms. Hamilton's HIPAA rights because of Ms. Hamilton's hearing disability. *See, e.g.*, Doc. No. 14 at p. 16 ("[Nurse Donlon] [t]ried to get Dr [sic] to violate my HIPPA rights just because I had a disability . . . ."). Ms. Hamilton's filing makes clear to the Court that Ms. Hamilton did understand the information Nurse Donlon communicated to her. In fact, Ms. Hamilton wrote that Nurse Donlon "falsified to the doctor that she could not communicate with me." Doc. No. 14 at p. 16. Accordingly, the Court does not construe Ms. Hamilton's complaints to base her ADA and Section 504 discrimination claims on her interactions with Nurse Donlon. And, if Ms. Hamilton did intend her allegations concerning Nurse Donlon to be a basis for her discrimination claim, the evidentiary record would not support the claim. *See, e.g.*, Def. Mot. Summ. J. Ex. B at 7, 23, 26.

[10]    There is evidence that Ms. Hamilton was called into S.R.'s schools to meet with School District personnel regarding S.R.'s behavioral issues on an emergency basis. Interpreting the evidence in the light most favorable to Ms. Hamilton, it appears to the Court that no sign language interpreters were provided during these nonscheduled interactions. *See, e.g.*, Def. Mot. Summ. J. at 251, 267. However, the Court is not willing to find a genuine dispute as to whether the School District violated the ADA or Section 504 by

Accordingly, Ms. Hamilton has not raised a genuine issue of material fact as to whether she "was denied the benefits of [any] program or was otherwise subject to discrimination because of her disability." *S.H.*, 729 F.3d at 260. Because the evidentiary record does not support an ADA or Section 504 discrimination claim against the School District, the Court grants summary judgment in favor of the School District on Ms. Hamilton's ADA and Section 504 discrimination claims.

### B.      Potential State Law Causes of Action

To the extent Ms. Hamilton has asserted any state law causes of action, the Court will exercise its discretion not to exercise supplemental jurisdiction over such state law claims because the Court grants summary judgment in favor of the Defendants on all of Ms. Hamilton's potential federal causes of action. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendant state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

### C.      Ms. Hamilton's Motions for Summary Judgment

The Court construes the document Ms. Hamilton titled "Explanation of Exhibits," Doc. No. 45, as Ms. Hamilton's effort to comply with Rule 56. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party moving for summary judgment to support its factual positions by "citing to

---

failing to have an on-call sign language interpreter for the occasions when a hearing-impaired adult is called in on an emergency basis due to their minor child's violent behavior. The Court's unwillingness to find a genuine dispute on this issue is heightened by the record evidence that the School District made efforts to follow such interactions with scheduled meetings at which the School District provided sign language interpreters. *See, e.g.*, Def. Mot. Summ. J. Ex. B. at 267.

The Court stresses that it is not faced with a scenario where the School District scheduled parent-teacher conferences in advance, yet nonetheless refused to provide a sign language interpreter to foster effective communication with a hearing-impaired parent. Such a situation would constitute unlawful discrimination by a public entity receiving federal assistance. *See Rothschild v. Grottenthaler*, 907 F.2d 286, 290-93 (2d Cir. 1990) (finding that Section 504 requires public schools to provide hearing-impaired parents with sign language interpreters during "school-initiated conferences" set for "scheduled times and locations").

particular parts of materials in the record").  Ms. Hamilton, however, has not supported her

assertions of fact with the exhibits she submitted to the Court in connection with her motions for

summary judgment.  This reason alone is sufficient for the Court to deny Ms. Hamilton's

motions for summary judgment.  *Celotex Corp.*, 477 U.S. at 323 (explaining that the "party

seeking summary judgment always bears the initial responsibility of informing the district court

of the basis for its motion[] and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact"); *see also* Fed. R. Civ. P. 56(a), (e);

Judge Gene E.K. Pratter's General Pretrial & Trial Procedures Section II.G[11] ("The Court will

not consider any assertion of a fact that is not supported by a citation to the record.").

However, the Court acknowledges the potential obstacles faced by a *pro se* litigant

seeking summary judgment.  Accordingly, the Court has reviewed the exhibits Ms. Hamilton

submitted in an effort to determine whether Ms. Hamilton has demonstrated that she is entitled to

summary judgment on any of her claims.  The exhibits Ms. Hamilton submitted to the Court in

connection with her motions for summary judgment can be separated into three categories:  (i)

exhibits not relevant to Ms. Hamilton's claims against Defendants, (ii) exhibits that, in light of

the evidentiary record as a whole, do not establish that Ms. Hamilton is entitled to summary

judgment, and (iii) exhibits that the Court construes as an effort by her to create a genuine issue

of material fact.

The first group of exhibits includes copies of a recovery plan created for S.R. as part of a

behavioral health assessment and a picture of a wound that Ms. Hamilton alleges is an injury

S.R. sustained as a result of a "battery" against S.R. by a school security guard.  *See, e.g.*, Doc.

---

[11]    Judge Pratter's General Pretrial and Trial Procedures are available on the Judges' Procedures page of the website for the United States District Court for the Eastern District of Pennsylvania (https://www.paed.uscourts.gov/), or directly at https://www.paed.uscourts.gov/ documents/procedures/prapol2.pdf.

No. 35 at pp. 2-5 (S.R.'s behavioral health recovery plan); Doc. No. 37 (picture of cut). Ms. Hamilton also submitted a brief video she describes as S.R. being "falsely imprisoned." *See* Doc. No. 45 at p. 1. The video shows individuals in an office and cannot be reasonably interpreted as evidence supportive of any claim. Even if the video were supportive of the allegation that Defendants falsely imprisoned S.R., the claim would be S.R.'s, which Ms. Hamilton is unable to bring proceeding *pro se*. These exhibits pertain exclusively to potential claims of S.R. that are not at issue in these actions, and as such, are not supportive of any claim Ms. Hamilton has asserted against Defendants.

The second group of exhibits includes phone logs Ms. Hamilton describes as evidence she called the police when attempting to retrieve S.R. from School District buildings, *see, e.g.*, Doc. No. 38 at pp. 2-3, pictures of incoming calls Ms. Hamilton describes as proof she received harassing phone calls, *see, e.g.*, Doc. No. 39 at p. 2, and e-mails between the School District and DHS Ms. Hamilton describes as proof the School District retaliated against her by filing reports with DHS, *see, e.g.* Doc. No. 40. As described more fully above, this evidence is not sufficient to defeat Defendants' motion for summary judgment, let alone establish that Ms. Hamilton is entitled to summary judgment.

The third group of exhibits includes documents supportive of Defendants' motions for summary judgment, on which Ms. Hamilton has simply written "fabrications" or "lies." *See, e.g.*, Doc. No. 36 at p. 2 (signed statement by S.R. that he punched a school employee); Doc. No. 41 at p. 12 (report describing S.R.'s physical attack on school employee). The Court views such exhibits as Ms. Hamilton's attempt to create, albeit unsuccessfully, a genuine issue of material fact. These types of exhibits are by definition not supportive of Ms. Hamilton's motions for summary judgment.

Accordingly, the Court denies Ms. Hamilton's motions for summary judgment.

**D.      Ms. Hamilton's Requests for S.R.'s Educational Expenses**

Ms. Hamilton, both in her complaints and in separate court filings, requests that the Court order the School District to pay for S.R. to go to a new school and to receive outside counseling services.  To the extent Ms. Hamilton seeks to bring claims pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA") for the School District's alleged failure to provide S.R. with a free appropriate public education, the Court is compelled to dismiss such claims for lack of subject matter jurisdiction because Ms. Hamilton has not satisfied the IDEA's administrative exhaustion requirement.  *See* 20 U.S.C. § 1415(i)(2)(A); *see also Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) ("Exhaustion of the IDEA's administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA.").[12]  Accordingly, if Ms. Hamilton wishes to pursue her rights under the IDEA, she can file a new civil action, but only *after* exhausting the IDEA's administrative process.

*        *        *

These cases, despite the allegations and accusations thrown about on all sides, all derive from Ms. Hamilton's stated efforts to put S.R. in the most beneficial educational setting.  The Court has no doubts that both the School District and Ms. Hamilton believe they are acting to further S.R.'s best interests.  It appears to the Court, however, that the individual suffering most from the current dispute is not Ms. Hamilton or any defendant, but, as is often the case, the minor, S.R.  The Court urges the School District and Ms. Hamilton to put their own

---

[12]      The Court notes that a parent/guardian can litigate their own rights under the IDEA without an attorney.  *See Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007).

disagreements and difficulties with each other aside and work cooperatively to put S.R.'s interests first to deal with the emotional, behavioral, and educational issues the minor presents.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motions for Summary Judgment are denied and the Defendants' Motions for Summary Judgment are granted.[13]

*        *        *

An appropriate order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[13]    Ms. Hamilton named Carl W. Holmes, Jr. as a defendant in C.A. 16-5602 and 16-6579.  The Court dismissed Mr. Holmes from C.A. 16-6579 and Ms. Hamilton did not amend her complaint as to Mr. Holmes by the Court's June 30, 2016 deadline.  *See* C.A. 16-6579, Doc. No. 27.  Based on a review of the docket in C.A. 16-5602, the Court determines that Mr. Holmes was never served with a summons and complaint in that action.  Accordingly, the Court will extend the time for Ms. Hamilton to effectuate service on Mr. Holmes as more fully described in the accompanying Order.